# In the United States Court of Federal Claims

**No. 11-223C**
**(Filed: December 5, 2016)**

| | |
|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * | |
| | * |
| | * **Patent Infringement; 28 U.S.C. §** |
| **AMERICAN INNOTEK, INC.,** | * **1498; Motion to Alter or Amend a** |
| | * **Judgment; RCFC 59(e); Timeliness;** |
| **Plaintiff,** | * **Grounds for Relief from a Final** |
| | * **Judgment; RCFC 60(b); Obviousness;** |
| **v.** | * **35 U.S.C. § 103.** |
| | * |
| **THE UNITED STATES,** | * |
| | * |
| **Defendant.** | * |
| | * |
| * * * * * * * * * * * * * * * * * * * * * * * | * |

_Daniel W. Ernsberger_, Behrend & Ernsberger, P.C., 355 Fifth Ave., 12th Floor, Pittsburgh, PA 15222, for Plaintiff.

_Benjamin C. Mizer_ and _John Fargo_, U.S. Department of Justice, Civil Division, Commercial Litigation Branch, Intellectual Property Staff, Washington D.C., P.O. Box 480, Ben Franklin Station, Washington, D.C. 20044, for Defendant. _Corey R. Anthony_, U.S. Department of Justice, Of Counsel.

---

## OPINION AND ORDER

---

**WILLIAMS**, Judge.

On October 7, 2016, Plaintiff filed a Rule 59(e) motion to alter or amend this Court's judgment finding Claims 1-4, and 17 of U.S. Patent No. 5,116,139 invalid as obvious and denying Plaintiff's claim of patent infringement under 28 U.S.C. § 1498 (2012). _Am. Innotek, Inc. v. United States_, 128 Fed. Cl. 135, 168-69. Plaintiff argues that this Court erred in finding invalidity because the Court failed "to identify the novel and inventive part of the invention before making a decision on validity." Pl.'s Br. 1 (emphasis in original).

For the reasons explained below, Plaintiff's motion is denied.

## Discussion

## Plaintiff's Rule 59(e) Motion is Untimely

Rule 59(e) requires that any motion to alter or amend judgment "must be filed no later than 28 days after the entry of the judgment."  RCFC 59(e).  This 28-day deadline is strictly enforced under Rule 6(b), which provides that "[t]he court must not extend the time to act under RCFC 52(b), 59(b), (d), and (e), and 60(b)."  RCFC 6(b)(2); see Spengler v. United States, 128 Fed. Cl. 338, 342 (2016) (enforcing Rule 6(b)(2)'s prohibition against extending filing deadlines for a motion to amend or alter a judgment); Johnson v. United States, 126 Fed. Cl. 558, 560 (2016) (same); see also Klamath Irr. Dist. v. United States, 68 Fed. Cl. 119, 120 (2005); Kraft, Inc. v. United States, 85 F.3d 602, 604-05 (Fed. Cir. 1996) (recognizing that the time to file a motion under RCFC 59(e) cannot be extended).

As Defendant correctly pointed out, Plaintiff's motion was filed one day late on October 7, 2016 - - 29 days after the Clerk of Court's entry of final judgment on September 8, 2016.  ECF. No. 179; ECF No. 186.  A Rule 59(e) motion must be filed "no later than 28 days after entry of the judgment" - - not after service.  RCFC 59(e).  This date is inflexible and not subject to Rule 6(d) which permits three additional days to respond to papers served under Rule 5(b)(C)-(F).  Williams v. Illinois, 737 F.3d 473, 475 (7th Cir. 2013) ("We now join every circuit that has ruled on this precise issue and conclude that Rule 6(d) [extending deadlines by 3 days to respond after service] . . . does not extend the deadline for Rule 59(e) motions." (collecting cases)); RCFC 59(e) Rule Committee's Note to 2010 amendment ("RCFC 6(b) continues to prohibit extension of the time allowed under this rule.").

Plaintiff admits that its Rule 59(e) motion is untimely, but claims that its motion should be treated as a motion for relief from final judgment under Rule 60(b)(1).  Plaintiff argues that the Court made a "mistake" in "the application of well settled legal principles" in finding the '139 Patent invalid.  Pl.'s Reply 12.

## Plaintiff Failed to Provide any Basis for Relief under Rule 60(b)

The Court may view an untimely motion to alter or amend a judgment as motion for relief under Rule 60(b).  This Rule provides:

**(b) Grounds for Relief from a Final Judgment, Order, or Proceeding.**  On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
**(1)** mistake, inadvertence, surprise, or excusable neglect;
**(2)** newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under RCFC 59(b);
**(3)** fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
**(4)** the judgment is void;
**(5)** the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

2

**(6)** any other reason that justifies relief.

RCFC 60(b); Mendez v. United States, No. 11-160C, 2014 WL 2772590, at *4 (Fed. Cl. June 18, 2004), aff'd, 600 F. App'x 731 (Fed. Cir. 2015) (nonprecedential) (citing 12 James Wm. Moore et al., Moore's Federal Practice § 59.11[4][b] (3d ed. 2012)).

Here, Plaintiff does not establish any of the grounds articulated in Rule 60(b)(1)-(5). As such, the only basis for this Court to review Plaintiff's motion is under Rule 60(b)(6)'s "catch-all provision" for relief from a final judgment - - "any other reason that justifies relief."   Mendez, 2014 WL 2272590, at *4; see Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 863 n.11 (1988) (recognizing that a motion under Rule 60(b)(6) is only available if a Plaintiff fails to show the more specific circumstances set out in Rule 60(b)(1)-(5)).

While Rule 60(b)(6) does permit reopening judgments in some circumstances, "[i]t is well settled that courts will not disturb final judgments unless the moving party demonstrates the existence of extraordinary circumstances." Eaglehawk Carbon, Inc. v. United States, 105 Fed. Cl. 128, 131 (2012) (citations omitted), aff'd sub nom, Aracoma Coal Co. v. United States, 521 F. App'x 929 (Fed. Cir. 2013); Ackerman v. United States, 340 U.S. 193, 202 (1950); see Gonzalez v. Crosby, 545 U.S. 524, 529, 535 (2005); Infiniti Info. Sols., LLC v. United States, 93 Fed. Cl. 699, 705 n.11 (2010) (collecting cases explaining what constitutes "extraordinary circumstances"). Plaintiff has cited no extraordinary circumstances in this case.

In arguing the Court erred in finding the '139 Patent invalid, Plaintiff claims that this Court "fail[ed] to identify the novel and inventive part of the invention before making a decision on validity." Pl.'s Br. 1. However, an obvious patent claim has no "novel" or "inventive part" due to the lack of differences between the prior art and the invention claimed. 35 U.S.C. § 103 (2006) (recognizing nonobviousness as a condition of patentability).

In Graham v. John Deere Co. of Kansas City, 383 U.S. 1 (1966), the Supreme Court outlined four factors a Court must consider in determining whether patent claims contain any "novel" or "inventive part":

1) the level of ordinary skill in the art,

2) the scope and content of the prior art,

3) the differences between the prior art and the claims at issue, and

4) any relevant secondary considerations or objective indicia of nonobviousness.

Bell Aerosol & Specialty Container, Inc. v. Ltd. Brand, Inc., 555 F.3d 984, 991 (Fed. Cir. 2009) (citing Graham, 383 U.S. at 17-18).

Plaintiff takes issue with this Court's application of the third Graham factor.  In analyzing the differences between the claims of the '139 Patent and the prior art, the Court concluded that there was nothing new in the '139 Patent not present in the prior art. Am. Innotek, 128 Fed. Cl. at 159-63. Indeed, Plaintiff's counsel admitted that the only difference between the prior art and the claims at issue was the "use of a powder instead of a sponge." Id. at 160. The ample evidence of

record established that the use of the powder would have been obvious to a person of ordinary skill in the art through the combination of U.S. Patent No. 3,403,410 ("Benzel"), Military Specification B-83665B ("Mil-Spec B"), and use of gellable absorbents generally as disclosed in the '139 Specification itself, Sherman, "Polymers, Polymers, Everywhere!: A Workshop for Pre-High School Teachers" published in October 1987, and U.K Patent Application No. 2,016,929 ("Fjeldså"). Id. at 167-68.

Nonetheless, Plaintiff persists in arguing that replacing the sponge in Benzel with a gellable absorbent was inventive citing the way in which the gellable absorbent interacts with fluid inside the Benzel bag and the funnel means present in the Benzel bag. Plaintiff claims that "the use of an absorbent for two purposes" - - 1) to sequester a portion of the fluid that enters the bag and 2) to alter the "unsequestered fluid" chemically so that it will not pass back through the funnel means - - would not have been obvious. Pl.'s Br. 2, 9. Plaintiff also suggests, with no evidence, that it would have been somehow difficult for a person of ordinary skill to "discover" the right granular material and "how to use the granular material." Pl.'s Mot. 24.

In contrast to Plaintiff's unsupported argument, Defendant provided clear and convincing evidence citing Benzel, Mil-Spec B, Sherman, Fjeldså, and Mr. Richard Moran's expert testimony that the "use of a gellable absorbent for these two purposes" is not inventive because the '139 Patent merely replaces the compressed sponge in Benzel with a well-known gellable absorbent. Am. Innotek, 128 Fed. Cl. at 167-68. As such, and as this Court found, Plaintiff simply reiterated the benefits of using the gellable absorbent over the compressed sponge in the Benzel bag based on how the gellable absorbent was already known to function. Id. at 160-61. Indeed, the '139 Specification itself referenced a well-known commercially available gellable absorbent, Sanwet, and stated that the Sanwet product was capable of performing the task of completely sequestering bodily fluids. Id. at 158 ("The [Sanwet] product has shown the property in our tests of gelling and sequestering all bodily fluids placed into test bags within no more than twenty seconds." (quoting '139 Patent 6:40-7:7)). The '139 Specification continued that the inventors "successfully used" Sanwet in the claimed fluid containment bag and stated that Sanwet is a "starch grafted sodium polyacrylate." Id. (quoting '139 Patent 6:65-7:2). In sum, how a known gellable absorbent would act in a fluid containment bag would have been predictable to a person of ordinary skill in the art, not inventive. Id. at 167-68 (citing KSR Int'l Co. v. Teleflex Inc., 550 U.S. 398, 417 (2007) ("If a person of ordinary skill can implement a predictable variation [of a patented invention with a combination of elements of prior art], § 103 likely bars its patentability)).

Second, Plaintiff contends that Defendant provided no evidence of motivation to combine the prior art references. Pl.'s Br. 5. However, the record contains clear and convincing evidence of such motivation. Specifically, Defendant provided the unrebutted testimony of its expert Mr. Moran, who detailed why a person of ordinary skill in the art would combine the teachings of Benzel, Mil-Spec B, and the known use of gellable polymers, taught by Sherman, Fjeldså, and by the description of the Sanwet product in the '139 Specification itself. Am. Innotek, 128 Fed Cl. at 162, 167.[1] This Court credited Mr. Moran's testimony and recognized the express teaching of

---

[1] Plaintiff's expert, Mr. Neil Martin, a patent attorney and mechanical engineer who also prosecuted the '139 Patent on Plaintiff's behalf before the Patent and Trademark Office, provided no testimony on the issue of motivation to combine, stating that it "would be pure speculation on [his] part" to testify on whether someone making a urine containment device would be "nudged in

Mil-Spec B - - a urine containment bag with a one-way valve containing a granular absorbent material capable of absorbing 500 cubic centimeters of urine - - that showed that a person of ordinary skill in the art would be motivated to combine the teachings in the prior art to achieve the invention recited in independent Claim 1 of the '139 Patent.  Id. at 167-68; see id. at 159-63 (detailing the lack of differences between the prior art and Claim 1 of the '139 patent).  Such expert testimony on what a person of ordinary skill would glean from the prior art references serves as strong evidence of motivation to combine.  Perfect Web Techs., Inc. v. InfoUSA, Inc., 587 F.3d 1324, 1329-30 (Fed. Cir. 2009) (crediting expert testimony for motivation to combine and noting that evidence of motivation to combine "may include recourse to logic, judgment, and common sense available to the person of ordinary skill that do not necessarily require explication in any reference or expert opinion").

Plaintiff attempts to minimize the significance of Mil-Spec B's teaching of a urine containment bag containing a granular absorbent by stating that "Mil-Spec B identifies the problem . . . [but] does not offer a solution to the problem."  Pl.'s Br. 7-8.  However, it is black letter law that a skilled artisan's knowledge of a problem in the relevant field can itself serve as evidence of motivation to combine.  KSR, 550 U.S. at 420 ("Under the correct [obviousness] analysis, any need or problem known in the field of endeavor at the time of inventions and addressed by the patent can provide a reason for combining the elements in the manner claimed." (emphasis added)); Ruiz v. A.B. Chance Co., 357 F.3d 1270, 1276 (Fed. Cir. 2004) (recognizing that "this court has consistently stated that a court or examiner may find a motivation to combine prior art references in the nature of the problem to be solved." (citing Pro-Mold & Tool Co., Inc. v. Great Lakes Plastics, Inc., 75 F.3d 1568, 1573 (Fed. Cir. 1996); Display Techs., Inc. v. Paul Flum Ideas, Inc., 60 F. App'x 787 (Fed. Cir. 2002); In re Huang, 100 F.3d 135, 139 n.5 (Fed. Cir. 1996)); In re Reinhart, 531 F.2d 1048, 1054 (C.C.P.A. 1976).  Identifying a problem particularly serves as evidence of motivation to combine when dealing with "simpler mechanical technologies" like the fluid containment bag claimed in the '139 Patent.  Ruiz, 357 F.3d at 1276.

In any event, contrary to Plaintiff's assertion, Mil-Spec B goes farther than merely identifying a problem - - this prior art reference explicitly teaches a solution to the problem of sanitary disposal of urine by recognizing that a urine containment bag could contain a granular material capable of absorbing urine.  Am. Innotek, 128 Fed. Cl. at 161 ("Mil–Spec B explicitly called for a product containing an absorbent of either sponge type compressed cellulose or granular material capable of absorbing 500 cubic centimeters of urine." (internal quotation marks omitted)).  This kind of explicit teaching in the prior art is strong evidence of motivation to combine.  Id. (citing In re Fulton, 391 F.3d 1195, 1201 (Fed. Cir. 2004); Bayer Healthcare Pharm., Inc .v. Watson Pharm., Inc., 713 F.3d 1369, 1374-76 (Fed. Cir. 2013)).

Third, Plaintiff has proffered a convoluted argument that the urine containment bag claimed in Benzel is somehow "dysfunctional" because its funnel means is "defective" and that the absorbent in the '139 Patent "convert[s] a dysfunctional urine collection bag into a functional urine collection bag that is a commercial success."  Pl.'s Br. 2-3.  Plaintiff never made any argument about Benzel's functionality to this Court.  Nor did Plaintiff challenge Benzel's status

---

the direction of hydrophilic powder."  Tr. 390; see Am. Innotek, Inc. v. United States, 128 Fed. Cl. 135, 140 (2016).  Mr. Martin did not offer an opinion on Mil-Spec B or motivation to combine in his expert reports, and the word "obviousness" does not appear in his reports.  See PX 57.

as prior art or provide evidence that Benzel was not functional.   The only mention of dysfunctionality Plaintiff made was with respect to the '139 Patent, not Benzel.   Pl.'s Resp. to Def.'s Post-Trial Br. 9-10 (arguing that "the one way valve [in the '139 Patent] is d[y]sfunctional when used with just plain water" and that the "powder in the water makes the d[y]sfunctional one way valve functional").

Even in the context of this motion, Plaintiff provides no evidence or legal authority to support its new argument that Benzel is "dysfunctional."   In any event, as a United States Patent, the urine containment bag claimed in Benzel is legally presumed to be useful and enabled - - meaning that a person of ordinary skill in the art could make and use the claimed invention and that the invention is "capable of providing some identifiable benefit."   35 U.S.C. §§ 101, 112, 282 (2006); Juicy Whip, Inc. v. Orange Bang, Inc., 185 F.3d 1364, 1366 (Fed. Cir. 1999); Hybridtech Inc. v. Monoclonal Antibodies, Inc., 802 F.2d 1367, 1375 (Fed. Cir. 1986); Panduit Corp. v. Dennison Mfg. Co., 810 F.2d 1561, 1570 (Fed. Cir. 1987).   As this Court recognized, Benzel claims a funnel that prevents escape of fluid via a "self-closing valve permitting flow of liquid from the neck portion into the body portion but closing against the outflow of liquid from the body portion."   Am. Innotek, 128 Fed. Cl. at 156 (quoting Benzel 3:8-12).   Plaintiff's belated effort to impugn the prior art teachings of Benzel does not disturb that prior art reference as a predicate for this Court's finding on obviousness.

Fourth, Plaintiff claims that its proffered secondary considerations of commercial success, long-felt need, and copying "overwhelm" Defendant's "claim that the invention was nothing more than a simple substitution of materials."   However, Plaintiff cites no evidence not already considered by the Court.   Pl.'s Br. 11; Am. Innotek, 128 Fed. Cl. at 163-67.[2]   Specifically, this Court found that Plaintiff failed to show that any of its proffered secondary considerations - - commercial success, long-felt but unsolved need, and copying - - were sufficient to overcome Defendant's strong prima facie case of obviousness.   Am. Innotek, 128 Fed. Cl. at 163-67.   Nor did Plaintiff show that there was a strong nexus between the claims of the '139 Patent and Plaintiff's proffered secondary considerations.   Id.   As such, Plaintiff failed to provide any ground for this Court to change its opinion and instead conclude that Plaintiff's secondary considerations were somehow sufficient to overcome the strong evidence of obviousness.   Id. at 167.

Lastly, Plaintiff contends that this Court should reach the issue of infringement, but cites to no legal authority for this proposition.   As this Court ruled based on ample precedent, "an invalid patent cannot be infringed."   Am. Innotek, 128 Fed. Cl. at 168-69 (citing Commil USA, LLC v. Cisco Sys., Inc., 135 S. Ct. 1920, 1931 (2015)).

---

[2]      In its motion, Plaintiff raises a fourth objective indicium of nonobviousness, unexpected results, arguing that it would have been unexpected that the '139 Patent would work with urine when "a person of ordinary skill in the art would have tested the product with synthetic urine . . . [which] would have shown leakage."   Pl.'s Mot. 34.   Plaintiff cited no evidence to meet its burden of showing unexpected results by demonstrating that "the results [of the combination of prior art references] were unexpected to a significant degree beyond what was already known . . . ."   Wm. Wrigley Jr. Co. v. Cadbury Adams USA LLC, 683 F.3d 1356, 1363 (Fed. Cir. 2012).   As such, the Court rejects Plaintiff's conclusory "unexpected results" argument.

## Conclusion

Plaintiff's motion to alter or amend judgment or for Rule 60(b) relief is **DENIED**.

s/Mary Ellen Coster Williams
**MARY ELLEN COSTER WILLIAMS**
**Judge**